IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ANDREW WOLFFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:20-CV-094-Z-BR |
| | § | |
| BATEN ISF/JORDAN UNIT, CHAIRMAN OF THE TEXAS BOARD OF CRIMINAL JUSTICE, DIRECTOR OF TDCJ-CID, and WARDEN OF THE TDCJ JORDAN UNIT in PAMPA, TEXAS, | § § § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

Before the Court is plaintiff ANDREW WOLFFORD's ("Wolfford's") Motion for Injunction Relief. Following a *Martinez* Report order by the Court, the defendants filed a Response and Objection to the plaintiff's request for injunctive relief, along with evidence. For the following reasons, the Court recommends Wolfford's motion should be DENIED.

I.
PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

Wolfford alleges that Texas Department of Criminal Justice ("TDCJ") officials at his unit of incarceration, the Baten ISF Unit[1], located in Pampa, Texas, are failing to adequately protect inmates from the dangers of the COVID-19 pandemic. At this time of these Findings and Conclusions, the

---

[1] The full name of this TDCJ Unit is the Baten Intermediate Sanction Facility ("ISF"). The Baten ISF facility is located in close proximity to the TDCJ Rufe Jordan Unit ("Jordan Unit") and is overseen by the same TDCJ Warden. TDCJ Unit Directory https://www.tdcj.texas.gov/unit_directory/jn_nj.html (last accessed June 1, 2020). Defendants allege plaintiff arrived at the Baten ISF Unit on March 6, 2020. (ECF No. 8, p. 1, n.1). The plaintiff dated his complaint on April 10, 2020, approximately one month after his arrival at Baten ISF but does not specify his arrival date at the unit.

United States of America, and most of the world, is in the midst of an outbreak of a respiratory illness known as COVID-19. As of the date the Court ordered defendants to submit a *Martinez* Report in response to plaintiff's allegations, the Centers for Disease Control reported nearly one million cases in American territories, resulting in approximately 50,000 deaths related to this illness, and the close confinement in prison populations can be an additional risk factor; as of the date of these Findings and Conclusions, there are over 1.75 million cases, and over 103,700 deaths.[2]

Plaintiff specifically alleges that overcrowding violations, quarantine issues, and social distancing violations are "forced upon [prisoner's] by prison staff." Further, plaintiff alleges inmates are denied "unrestricted access" to soap, cleaning supplies, hand sanitizer, disposable rags, and bleach. Plaintiff also makes a general statement of refusal of medical care, but does not claim any specific medical condition he himself possesses, or mention the denial of medical care to himself on any occasion. Plaintiff states there are two confirmed cases of COVID-19 at the Baten ISF Unit, and these individuals are being held in a staging area apart from other inmates, but these two individuals are subjected to cruel conditions.

Plaintiff also claims that telephone and commissary privileges are being denied during this time and inmates are not receiving proper access-to-the-courts due to the improper return of grievances that were not satisfactorily addressed, although he makes no specific claims as to denial of these rights to himself. Plaintiff states he cannot purchase over-the-counter medications from commissary, but does not claim what medication was needed or allege any specific deliberate indifference to his own medical needs.

---

[2] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): Cases in the U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 1, 2020). The Court takes judicial notice of this and other CDC statements regarding the virus. *See In re Abbott*, 954 F.3d 772, 779 (5th Cir. 2019) (taking judicial notice of CDC facts related to COVID-19). The Court will also take judicial notice of state and local statements. *See Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of information on state website). It is clear that the COVID-19 threat is real.

Plaintiff claims his housing at the Baten ISF Unit should terminate, because he is only there on a temporary basis to complete a specific program, which he alleges he has already completed. Plaintiff has not submitted any Reply, as allowed by the Court, to the defendants' Response and Objection to his requests for injunctive relief.

### III.
### LEGAL STANDARD

In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65(a), the applicant must demonstrate all four of the following elements:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied;

(3) the threatened injury outweighs any damage that the injunction might cause the defendant; and

(4) the injunction will not disserve the public interest."

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014) (quoting *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998)). Injunctive relief is an extraordinary remedy requiring the applicant to unequivocally show the need for its issuance. *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted), *cert. denied*, 134 S.Ct. 1789 (2014).

Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted). Additionally, for a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004). Movants for injunctive relief must show that constitutional violations have occurred and that state

officials are "demonstrably unlikely to implement required changes" without injunctive relief. *Hay v. Waldron*, 834 F.2d 481 (5th Cir. 1987).

Federal Rule of Civil Procedure 65(b)(1) governs the issuance of a temporary restraining order ("TRO"). Absent notice and opportunity to be heard from the opposing party, a TRO encompasses only restraint on a party for a fourteen-day period. Fed. R. Civ. P. 65(b)(2). If plaintiff's requests for restraint extend beyond this period, then the Court may construe his requests as a motion for a preliminary injunction; as such, the plaintiff must satisfy the substantive requirements for a preliminary injunction in order to obtain this relief. *See White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

IV.
ANALYSIS

The CDC issued a document related to the best practices for detention and correctional facilities during the pandemic, as of March 23, 2020, titled, "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities."[3] This guidance was posted before the filing of the present lawsuit. As a result, this Court ordered a *Martinez* Report to be submitted by defendants, in part to determine the implementation of such guidance at the Baten ISF Unit of TDCJ, and also to determine any specific grievances and complaints brought to the attention of TDCJ by this plaintiff.

Recently, the Fifth Circuit has addressed TDCJ's general response to the threat of COVID-19 in the context of a plaintiff's requests for injunctive relief. *See Valentine v. Collier*, –– F.3d ––, No. 20-20207, 2020 WL 1934431, at *3 (5th Cir. Apr. 22, 2020). The Fifth Circuit in that case determined that TDCJ's current response to the pandemic was sufficient to grant a stay of a district

---

[3] Accessible at https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf. Updates to the guidance will be posted at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last accessed June 1, 2020).

judge's injunctive order. *Id*. at *3. Further, the United States Supreme Court recently denied the Motion to Vacate the Stay entered by the Fifth Circuit. *See Valentine v. Collier*, ⸺ U.S. ⸺, 2020 WL 2497541, *1 (May 14, 2020). As part of the *Martinez* Report and attached evidence, defendants submitted the following documentation: (1) a record of the grievances filed in the last year by plaintiff; (2) the Correctional Managed Health Care ("CMHC") Infection Control Manual B-14.52: Coronavirus 2019 (COVID-19), with attachments A–L; (3) affidavit of Dr. Lannette Linthicum, MD, FACP, indicating how the CMHC Control Manual B-14.52 was created to address the CDC's guidance issued March 23, 2020, and was deemed adequate by the Fifth Circuit in *Valentine*; (4) affidavit of Oscar Mendoza, Deputy Director of TDCJ, regarding TDCJ's operational responses to the COVID-19 pandemic in Texas TDCJ units, with the attachment of the CDC's interim guidance; (5) plaintiff's intermediate sanction facility ("ISF") designation approval (his temporary housing at the Baten ISF Unit); (6) the Texas Board of Pardon and Paroles Policy regarding ISF placement; and (7) TDCJ's Offender Grievance Operation Manual, as it relates to plaintiff's claims for injunctive relief. Additionally, defendants submitted a second Response to the *Martinez* Report Order, and included the actual grievances filed by Wolfford regarding his COVID-19 related claims. Plaintiff has only filed a Step One grievance as of the date of the submission, but has the opportunity to follow up with a Step Two grievance within fifteen days.[4]

Based on plaintiff's requests for injunctive relief in his letter to the Court, the defendants' Response and Objection, and the evidence submitted in response to the *Martinez* Report, plaintiff does not merit injunctive relief. He has failed to meet the requirements, as outlined herein.

---

[4] It appears the time period for filing a Step Two grievance has now elapsed. As plaintiff has not filed any responsive pleading to the defendants' objection to his request for injunctive relief, it is unclear if he has continued to exhaust his administrative remedies. However, even if plaintiff filed a Step Two grievance, he had not properly exhausted his administrative remedies *before* filing suit for injunctive relief. Further, it is unclear whether a Step Two grievance was filed or whether TDCJ officials have reviewed or responded to any Step Two grievance from the current pleadings.

A. <u>Likelihood of Success on the Merits</u>

Although not clearly articulated, the plaintiff grounds his motion for injunctive relief related to COVID-19 protections in his underlying Eighth Amendment rights regarding the defendants' duty to provide adequate medical care, shelter, and to take reasonable measures to guarantee the safety of inmates. The question, therefore, is whether the he is likely to succeed on his claims that the defendants' response to COVID-19 violates the plaintiff's Eighth Amendment rights. *See Valentine v. Collier*, 2020 WL 1934431, at *3 (prisoners' entitlement to injunctive relief depends on showing of deliberate indifference).

"To establish liability against a governmental entity ... a plaintiff must ... show the existence of (1) a policy maker; (2) an official policy; and (3) causation, or a violation of rights whose moving force is the policy." *See Amos v. Taylor*, No. 4:20-CV-7-DMB-JMV, 2020 WL 1978382 at *9 (N.D. Miss. Apr. 24, 2020) (citing *Doe v. United States*, 831 F.3d 309, 317–18 (5th Cir. 2016)). While this standard ordinarily requires a policy, "a custom may also suffice." *Id*. A custom is a "persistent widespread practice" of governmental officials or employees that is "so common and well-settled" as to constitute a custom that "fairly represents policy." *Id*. A claim for injunctive relief against a governmental entity or a supervisory official must be likely to satisfy this standard. *Id.* (citations omitted).

The Eighth Amendment imposes on prison authorities a duty to protect prisoners. *Id.* (citing *Jason v. Tanner*, 938 F.3d 191, 195 (5th Cir. 2019)). This duty is violated by an official "only when two requirements are met. First, as an objective matter, the deprivation or harm must be sufficiently serious. Second, the official must have been deliberately indifferent." *Id*. (citing *Turner*, 938 F.3d at 195). To satisfy the first element, "the plaintiff must show an objectively intolerable risk of harm." *Id.* (citing *Valentine*, 2020 WL 1934431, at *3). The second requirement is subjective and requires

that the plaintiff show the defendant "(1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk." *Id*. (citing *Valentine*, 2020 WL 1934431, at *3). Here, the defendants contend they are not responding to the threat of COVID-19 with deliberate indifference and are taking adequate measures recommended by the CDC for responding to COVID-19 in correctional facilities, specifically in the Baten ISF Unit of TDCJ.

Even if the plaintiff could establish likelihood of success on the objective prong, he cannot make a similar showing as to the subjective prong. *See Amos,* 2020 WL 1978382 at *9. The deliberate indifference standard may be satisfied when officials respond to an infectious disease "outbreak with a series of negligent and reckless actions." *Id.* (citing *DeGidio v. Pung*, 920 F.2d 525, 533 (8th Cir. 1990)). "[K]nown noncompliance with generally accepted guidelines for inmate health strongly indicates deliberate indifference to a substantial risk of serious harm." *Id.* (citing *Hernandez v. County of Monterey*, 110 F. Supp. 3d 929, 943 (N.D. Cal. 2015)). Such guidelines may include CDC guidance, even if the guidance is not mandatory. *Id*. However, mere departure from recommended best practices is insufficient to show deliberate indifference. *Id.* (citing *M.D. ex rel. Stukenberg v. Abbot*, 929 F.3d 272, 289 (5th Cir. 2019)) (Higginbotham, J., concurring in part) ("Best practices are not the handmaiden of deliberate indifference."). Rather, the known noncompliance must result in an excessive risk to inmate health or safety. *Id.* (citing *Tanner*, 938 F.3d at 195).

Here, plaintiff has not filed any Reply to the Objection and Response to his injunctive relief request. Further, he has not presented any allegations that amount to deliberate indifference. His motion indicates that the inmate who contracted COVID-19 at his facility is being quarantined and

other inmates in contact with that inmate are being tested. Further, plaintiff has not stated any specific instance where the policies in place were deliberately ignored by prison staff.

B. Substantial Threat of Irreparable Injury

The Fifth Circuit recently determined that plaintiffs fail to adequately show a threat of irreparable injury where no violations occur *after* protective measures are put into place in accordance with CDC recommendations. *Valentine*, 2020 WL 1934431, at *5. Here, plaintiff has failed to articulate any specific action taken by defendants that fails to meet the protective measures in place at his unit. Therefore, he has not shown a threat of irreparable injury.

C. Whether Threatened Injury Outweighs Burden on Defendants

Here, the State of Texas would suffer from irreparable injury if the Court were to intervene with an order that directly contradicts the decision in *Valentine*. TDCJ has implemented specific policies and protections for inmates in response to the COVID-19 pandemic. Plaintiff has failed to show that employees of the Baten ISF Unit are acting with deliberate indifference to those protective measures. As such, any order by the Court for a change in policy creates an unreasonable burden on TDCJ to implement changes that could be burdensome.

D. Public Interest

Where, as here, protective measures are in place, plaintiff's failure to fully utilize the grievance procedures before bringing suit makes any request for injunctive relief against the public interest. Even if plaintiff believed the TDCJ grievance process would not render a favorable result, he was obligated to pursue his administrative remedies prior to making any request for injunctive relief and intervention from the courts. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). It would subvert the public interest for this Court to allow plaintiff to proceed with his request for injunctive relief without providing TDCJ the opportunity to address his concerns.

Plaintiff has failed to meet any of the four requirements for injunctive relief. Without a showing he merits preliminary injunctive relief, plaintiff cannot make any showing for permanent injunctive relief. Plaintiff must additionally show that equitable relief is appropriate in all other respects to warrant a permanent injunction. *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004). As such, plaintiff's request for injunctive relief should be DENIED.

## V.
## RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that Wolfford's motion for injunction relief be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 1, 2020.

*[signature]*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).